UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| RTI CONNECTIVITY PTE. LTD., a Singapore private limited company and RUSSELL A. MATULICH,<br><br>              Plaintiffs,<br><br>     vs.<br><br>GATEWAY NETWORK CONNECTIONS, LLC,<br><br>              Defendant. | CIV. NO. 22-00302 LEK-RT |

**ORDER GRANTING PLAINTIFFS' MOTION FOR EXPEDITED ORDER TO CONFIRM AND ENFORCE PRE-AWARD RULING AND AWARD OF ARBITRATION PANEL**

Before the Court is Plaintiffs RTI Connectivity Pte., Ltd. ("RTI-C") and Russell A. Matulich's ("Matulich" and collectively "Plaintiffs" or "Claimants") Motion for Expedited Order to Confirm and Enforce Pre-Award Ruling and Award of Arbitration Panel ("Motion to Confirm"), filed on June 27, 2022 in state court. See Defendant Gateway Network Connections, LLC's Notice of Removal, filed 7/11/22 (dkt. no. 1), Decl. of Randall C. Whattoff ("Whattoff Removal Decl."), Exh. 1 (Motion to Confirm). Defendant Gateway Network Connections, LLC ("GNC" or "Respondent") filed its memorandum in opposition on July 21, 2022. [Dkt. no. 11.] This matter came on for hearing on July 26, 2022. The Motion to Confirm is hereby granted for the reasons set forth below.

## BACKGROUND

RTI-C and GNC are involved in an on-going arbitration. See Notice of Removal at ¶ 3 (noting the order before the Court in the Motion to Confirm is an interim ruling issued in a pending arbitration before Dispute Prevention & Resolution, Inc. ("DPR")); see also Motion to Confirm, Decl. of Leroy E. Colombe ("Colombe Decl."), Exh. A (copy, without exhibits, of RTI-C's Commercial Arbitration Rules Demand for Arbitration, dated 4/13/21 ("Arbitration Demand")).[1]  Plaintiffs filed this action to confirm and enforce the DPR arbitration panel's ("Arbitration Panel") June 17, 2022 pre-award rulings and order ("6/17/22 Interim Order").  See Motion to Confirm at 2 (dkt. no. 1-3 at PageID #: 12).[2]

---

[1] Although the Arbitration Demand was originally submitted to the American Arbitration Association, see Colombe Decl., Exh. A (Arbitration Demand) at 1 (dkt. no. 1-3 at PageID #: 25), the parties later agreed to have DPR conduct the arbitration proceeding.  See id., Exh. H (Agreement to Participate in Binding Arbitration, dated August 4 and 17, 2021 ("Arbitration Agreement")).

[2] The 6/17/22 Interim Order is titled "Order Setting Evidentiary Hearing on Claimants' Motion to Clarify the Panel's June 7, 2022, Interim Order and Status Update Re: GNC's Violation of the Panel's June 7, 2022 Interim Order Granting RTI-C Customary Access and Service and Issuance of Temporary Restraining Order Restraining and Enjoining GNC's [sic] from Denying Claimnts [sic] Customary Access and Service at the GNC Data Center."  See Colombe Decl., Exh. G at 1 (dkt. no. 1-3 at PageID #: 111).

According to the Arbitration Demand, RTI-C "is a Singapore private limited company with its principal place of business in Singapore" and Matulich, an individual who resides in California, is a former board member and chief executive officer ("CEO") of GNC.  [Colombe Decl., Exh. A (Arbitration Demand) at Attachment A, § I (dkt. no. 1-3 at PageID #: 27).] GNC states it is a Guam limited liability company ("LLC") with two members: Asia Connectivity Elements, Inc. ("ACE"), a Guam corporation with its principal place of business in Guam; and Teleguam Holdings, LLC ("Teleguam"), a Delaware LLC.  Teleguam has one member - Teleguam Holdings, Inc., a Delaware corporation with its principal place of business in Guam.  [Notice of Removal at ¶¶ 15-15.b.]

The Arbitration Panel summarized the background of the parties' dispute as follows:

> This arbitration involves, in part, a dispute under a master license and service agreement dated July 1, 2020, hereafter the MSA. Under the MSA, GNC granted RTI-C a non-exclusive revocable license to use certain space at GNC's data center in Guam [("Data Center")], so that it could install, operate, and maintain its equipment.[3]
>
> On December 31, 2020, Claimant Russell Matulich was removed as the CEO of one of the

---

[3] The equipment at issue relates to "the subsea fiber optic cable business."  Cf. Colombe Decl., Exh. A (Arbitration Demand) at Attachment A, § II (dkt. no. 1-3 at PageID #: 27); id. (dkt. no. 1-3 at PageID #: 30); id. at § VII (dkt. no. 1-3 at PageID #: 34-35).

> members of GNC.  GNC claims that Matulich's
> removal as CEO of one of GNC's members
> automatically removed him as a director of GNC.
> RTI-C and Matulich dispute that Matulich was
> effectively removed as a director of GNC.
>
> After Matulich's removal as CEO, GNC took
> actions under the MSA, which required the
> unanimous approval of the board of directors of
> GNC.  These actions included issuing
> approximately $500,000 in invoices to RIT-C
> dating back to July 2020 and threatened to turn
> off RTI-C's equipment at the GNC Data Center.
>
> RTI-C paid GNC under protest and initiated
> litigation and in April 2020, this arbitration.
> RTI-C has paid $813,835.00 of the $1,137,234 in
> GNC invoices and is disputing the remainder in
> this arbitration.  RTI-C was fully paid up on
> rent until the start of the arbitration in April
> when it stopped paying approximately 50% of GNC's
> monthly charges, asserting that said amount is
> the undisputed portion of the charges.  The
> remaining charges claimed by GNC, along with the
> validity of the MSA, are at issue in this
> arbitration.

[Colombe Decl., Exh. B (Order Granting Claimant's Emergency

Request for an Interim Order to Maintain the Status Quo at

Gateway Network Connection, LLC's Data Center, dated 9/10/21

("9/10/21 Interim Order")) at 2 (dkt. no. 1-3 at PageID #: 40).]

The 9/10/21 Interim Order was entered in response to Plaintiffs'

Emergency Request for an Interim Order to Maintain the Status

Quo at the Gateway Network Connection LLC's Data Center, which

the Arbitration Panel heard on September 3, 2021 ("First

Emergency Motion").  See id. at 1 (dkt. no. 1-3 at PageID

#: 39).]

The Arbitration Panel found that GNC

has locked RTI-C out of its space and is not allowing RTI-C to install, operate, and maintain its equipment. **If GNC is allowed to continue to do so, RTI-C will be deprived of the use and utility of its space at the GNC Data Center and thus the ability to secure the fruits of this arbitration**, should RTI-C prove successful in its claim that GNC's 2021 invoices of unbilled 2020 services and other heretofore disputed invoices are invalid.

. . . .

Rule 24 of the DPR Rules empowers the panel to issue interim awards to maintain the status quo until the award of the arbitrators is rendered or the controversy is otherwise resolved. **The panel finds that it is reasonable and necessary to maintain the status quo** related to the access and use by RTI-C of the licensed space at the GNC Data Center pending a resolution of the dispute over the validity of the MSA and the invoices issued by GNC to RTI-C.

[Id. at 3 (dkt. no. 1-3 at PageID #: 41) (emphases added).]  The

9/10/21 Interim Order: required GNC to provide, until

December 1, 2021, RTI-C "with the customary access and service

that it was providing to RTI-C prior to December 31, 2020"

("Customary Access and Services"); and required RTI-C to make

all payments and comply with all terms of the MSA, unless the

payment or MSA term was disputed in the arbitration ("Undisputed

Payments and Terms").  [Id. at 4 (dkt. no. 1-3 at PageID

#: 42).]

On October 22, 2021, Plaintiffs filed their Emergency

Request for an Order Compelling GNC to Provide Additional Power

to RTI-C's Cage and Request for Sanctions ("Second Emergency Motion"). [Mem. in Opp., Decl. of Randall C. Whattoff ("Whattoff Opp. Decl."), Exh. 5.] The Arbitration Panel denied the Second Emergency Motion because Plaintiffs "fail[ed] to demonstrate that maintaining the status quo requires GNC to provide additional power to the RTI-C cage on terms that were not specifically agreed to prior to the initiation of this arbitration." [Id., Exh. 6 (Order Denying Claimants' Emergency Request for an Order Compelling GNC to Provide Additional Power to RTI-C Cage and for Sanctions, dated 10/30/21).]

In an October 17, 2021 order, the Arbitration Panel bifurcated the proceedings, with the first portion of the proceeding addressing Matulich's purported removal as the CEO and a director of GNC. See Colombe Decl., Exh. B (Findings of Fact and Conclusions of Law and Final Award on Bifurcated Issue of Whether Claimant Russell Matulich Was Effectively Removed as the CEO and Director of Respondent Gateway Network Connections, LLC, dated 5/17/22 ("5/17/22 Matulich Award")) at 1 (dkt. no. 1-3 at PageID #: 44). The Arbitration Panel ultimately ruled that Matulich was not effectively removed as, and therefore remained, the CEO and a director of GNC. The Arbitration Panel also ruled

that Matulich was not effectively removed as the CEO of ACE.[4] [Id. at 15 (dkt. no. 1-3 at PageID #: 58).]

RTI-C subsequently filed a motion for emergency relief from the Arbitration Panel because RTI-C asserted GNC was ignoring both the 5/17/22 Matulich Award and the 9/10/21 Interim Order ("Third Emergency Motion"). See Colombe Decl., Exh. D (Memorandum in Support of Claimants' Emergency Motion, dated 5/31/22) (dkt. no. 1-3 at PageID #: 61-81). GNC argues the Third Emergency Motion arises from Plaintiffs' attempt to gain improper access to the Data Center and to run new power connections into RTI-C's cage without complying with the terms of the MSA and the Data Center's policies. [Mem. in Opp. at 6-7 (citing Whattoff Opp. Decl., Exh. 7 (GNC's mem. in opp. to Plaintiffs' Third Emergency Motion) at 8-11).]

The Arbitration Panel decided to address the issues raised in RTI-C's Third Emergency Motion during the August 22 to 24, 2022 hearing on the remaining claims in the arbitration because it recognized that "the presentation of further evidence and briefing" was necessary. See Colombe Decl., Exh. E (Order

---

[4] GNC states that, on May 28, 2022, the members of GNC removed Matulich as a manager and director, and the members of GNC removed him as the CEO. GNC asserts those removals were accomplished by following all of the necessary steps identified in the 5/17/22 Matulich Award. [Mem. in Opp. at 6 n.3 (citing Whattoff Opp. Decl., Exh. 7 (excerpt of GNC's Memorandum in Opposition to Claimants' "Emergency Motion," dated 6/3/22), Exhs. G-L).]

Setting Evidentiary Hearing on Claimants' Emergency Motion and Consolidating Said Evidentiary Hearing with the Hearing Already Set on All Arbitration Claims in this Case, dated 6/7/22 ("6/7/22 Interim Order")) (dkt. no. 1-3 at PageID #: 83-84). The Arbitration Panel ordered GNC to continue to provide RTI-C with Customary Access and Services and ordered RTI-C to continue to comply with all Undisputed Payments and Terms.  See id. at 2 (dkt. no. 1-3 at PageID #: 84).

According to Plaintiffs, GNC failed to comply with the 6/7/22 Interim Order, and Plaintiffs asked the Arbitration Panel to clarify the order.  See Colombe Decl., Exh. F (copy, without exhibits, of Plaintiffs' Motion to Clarify the Panel's June 7, 2022, Interim Order and Status Update Re: GNC's Violation of the Panel's June 7, 2022 Interim Order Granting RTI-C Customary Access and Service, dated 6/15/22 ("Motion to Clarify")) (dkt. no. 1-3 at PageID #: 86-109).  According to GNC, the Motion to Clarify sought relief beyond what had been previously ordered by the Arbitration Panel.  [Mem. in Opp. at 9.]  GNC sent an email to Plaintiffs and to the Arbitration Panel, arguing the panel should not consider the Motion to Clarify at all and, if the panel was inclined it consider it, GNC should have a reasonable amount of time to file a written response.  See Whattoff Decl., Exh. 8 (email dated 6/16/22 from GNC's counsel, Ronald Heller, Esq., to Kelly Bryant, DPR Case Manager).

The Arbitration Panel stated it would address the issues in the Motion to Clarify during the hearing scheduled for August 22, 2022 because the issues in the Motion to Clarify were related to those raised in the Third Emergency Motion.  See 6/17/21 Interim Order at 2 (dkt. no. 1-3 at PageID #: 112).  The Arbitration Panel:

> concluded that **it is necessary and appropriate to issue an additional interim award to maintain the status quo until the final award of the arbitrators is rendered or the controversy is otherwise resolved.  That additional interim award is in the form of the following Temporary Restraining Order:**
>
> IT IS HEREBY ORDERED AND DECREED that Gateway Network Connections, LLC, (GNC) its officers, directors, Members, agents, servants, employees, attorneys and all those acting in concert with GNC is hereby restrained and enjoined from violating and/or circumventing the Panel's *Order Granting Claimant's Emergency Request For An Interim Order To Maintain The Status Quo At Gateway Network Connection, LLC's Data Center* dated September 10, 2021 and the Panel's *Order Setting Evidentiary Hearing On Claimants' Emergency Motion And Consolidating Said Evidentiary Hearing With The Hearing Already Set On All Arbitration Claims In This Case* dated June 7, 2022 which said orders are incorporated herein as though fully set forth except that the effectiveness of said Orders is extended until the final ruling in this case.

[6/17/22 Interim Order at 2 (dkt. no. 1-3 at PageID #: 112) (bold emphasis added).]  The Arbitration Panel also made specific rulings about the Customary Access and Services that GNC was required to provide under the panel's interim orders and

RTI-C's rights and obligations under those orders.  See id. at 3 (dkt. no. 1-3 at PageID #: 113).

In the instant case, Plaintiffs ask this Court to confirm and enforce the 6/17/22 Interim Order.  GNC urges this Court to deny the Motion to Confirm because: the 6/17/22 Interim Order is not subject to judicial review because it is not a final award; and, if this Court reviews the 6/17/22 Interim Order, this Court should deny confirmation because the order does not meet the basic requirements for confirmation of an arbitration award.

## DISCUSSION

## I.  Applicable Law

The parties and the members of the Arbitration Panel agreed that: "This arbitration shall be governed by [Haw. Rev. Stat. Chapter] 658A[,]" and that the parties had the right to file a motion in the State of Hawai`i First Circuit Court to confirm, correct, modify, or vacate the panel's award.  See Colombe Decl., Exh. H (Arbitration Agreement) at 1 (dkt. no. 1-3 at PageID #: 116).[5]  Plaintiffs ask this Court to confirm the

---

[5] Although Plaintiffs filed the Motion to Confirm in state court, GNC removed the action based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 201, et seq., and, in the alternative, diversity jurisdiction.  [Notice of Removal at ¶¶ 7-18.]  Plaintiffs have not contested the propriety of removal, and this Court concludes that subject matter
(. . . continued)

6/17/22 Interim Order pursuant to Haw. Rev. Stat. §§ 658A-18,
658A-22, and 658A-25.  See Motion to Confirm at 2 (dkt. no. 1-3
at PageID #: 12).  In contrast, GNC argues the Federal
Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, applies to this
Court's consideration of the Motion to Confirm.

        GNC has not contested the validity of either the
Arbitration Agreement as a whole or the provision stating the
arbitration will be governed by Haw. Rev. Stat. Chapter 658A.
However, in a case involving an agreement which stated "'[a]ll
arbitration proceedings shall be administered . . . in
accordance with Hawaii's Uniform Arbitration Act (Hawaii Revised
Statutes Chapter 658(A)) (the "HUAA")[,]'" this district court
stated:

> this provision alone — which by its terms applies
> only to all "arbitration proceedings" — may be
> insufficient to nullify the Ninth Circuit's
> "strong default presumption that the [Federal
> Arbitration Act (the "FAA")], not state law,
> supplies the rules" for confirmation of
> arbitration awards.  Johnson v. Gruma Corp., 614
> F.3d 1062, 1066-67 (9th Cir. 2010) (ellipsis and
> internal quotation marks omitted) (quoting Fid.
> Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306,
> 1311 (9th Cir. 2004)).  As this Court has
> explained, that "presumption only can be overcome
> by clear intent to incorporate state law rules
> for arbitration" into the confirmation of
> arbitration awards.  Metzler Contracting Co. LLC
> v. Stephens, 774 F. Supp. 2d 1073, 1077 (D. Haw.
> 2011) (internal quotation marks omitted), *aff'd*,
> 479 Fed. Appx. 783 (9th Cir. 2012).

jurisdiction exists, based on the Convention, 9 U.S.C. § 203,
and/or diversity jurisdiction, 28 U.S.C. § 1332(a)(2).

<u>Young Men's Christian Ass'n of Honolulu v. Aloha Kai Dev., LLC</u>,
Civ. No. 18-00086 ACK-KSC, 2018 WL 2708739, at *3 (D. Hawai`i
June 5, 2018) (alteration in <u>YMCA</u>).

In contrast, the contract in <u>Metzler</u> stated
"arbitration . . . shall be in accordance with the Construction
Industry Arbitration Rules of the American Arbitration
Association currently in effect" and "judgment may be entered
upon [a final arbitration award] in accordance with applicable
law in any court having jurisdiction thereof."  774 F. Supp. 2d
at 1077 (quotation marks and citation omitted).  The district
court found that these statements did "not evince a clear intent
to choose state over federal arbitration rules[,]" and the
district court concluded that federal law applied to the issue
of whether the award should be confirmed or vacated.  <u>Id.</u>
(citation omitted).  In contrast, the agreement in <u>YMCA</u> stated
the arbitration would be conducted in accordance with the HUAA,
and a judgment may be entered upon the arbitrator's award in
accordance with the HUAA.  2018 WL 2708739, at *3-4.

In the instant case, the Arbitration Agreement
expressly states the "arbitration shall be governed by
HRS 658A."  [Colombe Decl., Exh. H (Arbitration Agreement) at 1
(dkt. no. 1-3 at PageID #: 116).]  It also states: "the parties
reserve their right to file a motion in the First Circuit Court

of the State of Hawaii to confirm, correct, modify, or, vacate
the award based upon any applicable law.  The parties may appeal
said order of the First Circuit Court under applicable law."
[Id.]  While this statement of the law applicable to a motion to
confirm or vacate the arbitration award is not as clear as the
statement in YMCA, it clearly expresses the parties' intent that
any action to confirm or vacate the arbitration award would be
litigated in the state courts and therefore under state law.
This Court therefore concludes that, under the circumstances of
this case, Haw. Rev. Stat. Chapter 658A governs the Motion to
Confirm.

       This Court also notes that principles of fairness
provide additional support for the application of Chapter 658A.
The parties entered into the Arbitration Agreement in
August 2021, and the record before this Court shows that the
parties have submitted multiple filings and engaged in
substantive proceedings in the arbitration since that time.
These proceedings all have been governed by Chapter 658A and GNC
did not dispute the application of Chapter 658A to the
proceedings until the Notice of Removal.  However, the mere fact
GNC filed its Notice of Removal does not void either the
governing law provision of the Arbitration Agreement nor does it
negate GNC's submission to application of Hawai`i law for the
approximately ten months of arbitration proceedings before GNC

13

filed its Notice of Removal.  Although this Court has rejected GNC's argument that the FAA applies, this Court notes that the result in this case would be the same under either Haw. Rev. Stat. Chapter 658A or the FAA.

## II.  <u>Judicial Review of an Interim Order Under Chapter 658A</u>

> Under [Chapter 658A], and given "the legislative policy to encourage arbitration and thereby discourage litigation, judicial review of an arbitration award is confined to 'the strictest possible limits.'" <u>Ventress v. Japan Airlines</u>, 603 F.3d 676, 679 (9th Cir. 2010) (citing <u>Gadd v. Kelley</u>, 66 Haw. 431, 667 P.2d 251, 258 (Haw. 1983)).  Accordingly, HRS § 658A requires courts to confirm arbitration awards unless an award is modified or corrected pursuant to § 658A-24, or vacated under limited circumstances pursuant to § 658A-23.  <u>Matter of Hawai`i State Teachers Ass'n</u>, 140 Haw. 381, 391, 400 P.3d 582, 592 (Haw. 2017); <u>In re Grievance Arbitration Between State Org. of Police Officers</u>, 135 Haw. 456, 462, 353 P.3d 998, 1004 (Haw. 2015).  One permissible ground for a court to vacate an award under the HUAA, for example, is where "[a]n arbitrator exceeded the arbitrator's powers."  HRS § 658A-23(a)(4). . . .

<u>YMCA</u>, 2018 WL 2708739, at *4 (some alterations in <u>YMCA</u>).

GNC first argues the 6/17/22 Interim Order cannot be confirmed because it is not a final award.  However, Chapter 658A clearly authorizes arbitrators to issue interim awards and authorizes courts to confirm interim awards.  Haw. Rev. Stat. § 658A-8(b)(1) states that,

> [a]fter an arbitrator is appointed and is authorized and able to act:

> (1)  The arbitrator may issue such orders
> for provisional remedies, **including interim**
> **awards,** as the arbitrator finds necessary to
> protect the effectiveness of the arbitration
> proceeding and to promote the fair and
> expeditious resolution of the controversy,
> to the same extent and under the same
> conditions as if the controversy were the
> subject of a civil action . . . .

(Emphasis added.)  The Arbitration Panel found that the interim

award in the 6/17/22 Interim Order was "necessary and

appropriate . . . to maintain the status quo" until the

completion of the arbitration proceeding.  [6/17/22 Interim

Order at 2 (dkt. no. 1-3 at PageID #: 112).]  The 6/17/22

Interim Order incorporates the 9/10/21 Interim Order and the

6/7/22 Interim Order, [id.,] and the 9/10/21 Interim Order noted

that interim relief was necessary because, without such relief,

RTI-C would "be deprived of . . . the fruits of this

arbitration," even if it ultimately prevailed on the arbitrated

claims, [Colombe Decl., Exh. B (9/10/21 Interim Order) at 3

(dkt. no. 1-3 at PageID #: 41)].  This Court therefore concludes

that the Arbitration Panel had the authority to issue the

provisional remedy in the 6/17/22 Interim Order because the

interim award was "necessary to protect the effectiveness of the

arbitration proceeding and to promote the fair and expeditious

resolution of the controversy[.]"  See § 658A-8(b)(1); see also

Haw. Rev. Stat. § 658A-18 ("If an arbitrator makes a pre-award

ruling in favor of a party to the arbitration proceeding, the

party may request the arbitrator to incorporate the ruling into an award under section 658A-19.").

Thus, this Court has jurisdiction to consider a motion to confirm an interim award by the Arbitration Panel.  See § 658A-18 ("A prevailing party may make a motion to the court for an expedited order to confirm the award under section 658A-22, in which case the court shall summarily decide the motion. The court shall issue an order to confirm the award unless the court vacates, modifies, or corrects the award under section 658A-23 or 658A-24."); see also Haw. Rev. Stat. § 658A-22 ("After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23.").

## III. **Judicial Review of an Interim Order Under the FAA**

If this Court found that the language in the Arbitration Agreement did not express a clear intent to incorporate state law rules, this Court would next address whether the Convention applies.  9 U.S.C. § 202 states:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title,

16

> falls under the Convention.  An agreement or
> award arising out of such a relationship which is
> entirely between citizens of the United States
> shall be deemed not to fall under the Convention
> unless that relationship involves property
> located abroad, envisages performance or
> enforcement abroad, or has some other reasonable
> relation with one or more foreign states.  For
> the purpose of this section a corporation is a
> citizen of the United States if it is
> incorporated or has its principal place of
> business in the United States.

The agreement between RTI-C and GNC to arbitrate arises out of their relationship, and that relationship is commercial in nature.  See generally Colombe Decl., Exh. A (Arbitration Demand) at Attachment A (dkt. no. 1-3 at PageID #: 27-37) (describing the parties and the dispute).  Further, the dispute is not "entirely between citizens of the United States[.]"  See id. at § I (dkt. no. 1-3 at PageID #: 27); Notice of Removal at ¶¶ 15-15.b.  This Court therefore concludes that the Convention applies.

Arbitration awards under the Convention are confirmed as follows:

> Within three years after an arbitral award
> falling under the Convention is made, any party
> to the arbitration may apply to any court having
> jurisdiction under this chapter for an order
> confirming the award as against any other party
> to the arbitration.  The court shall confirm the
> award unless it finds one of the grounds for
> refusal or deferral of recognition or enforcement
> of the award specified in the said Convention.

9 U.S.C. § 207.  The FAA "applies to actions and proceedings brought under th[e Convention] to the extent th[e FAA] is not in conflict with" the Convention.  9 U.S.C. § 208.  Under the FAA,

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. . . .

9 U.S.C. § 9.

Unlike Haw. Rev. Stat. Chapter 658A, the FAA does not contain express provisions authorizing judicial confirmation of interim awards.  However, the Ninth Circuit has held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA."  Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1023 (9th Cir. 1991).  The Arbitration Panel's 6/17/22 Interim Order is a temporary equitable order that was calculated to secure the performance necessary to make the panel's final award meaningful.  See Colombe Decl., Exh. G (6/17/22 Interim Order) at 2 (dkt. no. 1-3 at PageID #: 112) ("the Panel has concluded that it is necessary and appropriate to issue an additional

18

interim award to maintain the status quo until the final award
of the arbitrators is rendered or the controversy is otherwise
resolved"). The 6/17/22 Interim Order is a final order as to
the issue of what relief was necessary to maintain the status
quo until the conclusion of the arbitration. This Court
therefore concludes that it has jurisdiction to review the
6/17/22 Interim Order under the FAA.

## IV. **Whether the 6/17/22 Interim Order Must Be Confirmed**

The remainder of this Court's analysis is the same
under either Haw. Rev. Stat. Chapter 658A or the FAA. As with
§ 9 of the FAA, under either § 658A-18 or § 658A-22, a
prevailing party may move for judicial confirmation of the
arbitration award, and the award must be confirmed unless the
award is vacated, modified, or corrected. Plaintiffs argue
that, because GNC has not filed a motion to vacate, modify, or
correct the 6/17/22 Interim Order, this Court must confirm the
order. See, e.g., Cox Fricke v. Barranco, CIVIL 17-00148 LEK-
RLP, 2017 WL 11139651, at *3 (D. Hawai`i July 26, 2017)
("Defendant has not filed a motion seeking to vacate the Partial
Award [of Arbitrator]. Moreover, the Court has already
explained that Defendant's position on the terms of the Partial
Award is inapposite. The Motion [to Confirm Arbitration Award]
is therefore granted." (citation omitted)).

19

This Court declines to grant Plaintiffs' Motion based solely upon GNC's failure to file a motion to vacate the 6/17/22 Interim Order, and this Court will consider the merits of GNC's argument that the order cannot be confirmed because there are grounds to vacate the order.  Haw. Rev. Stat. § 658A-23(a) states that an arbitration award shall be vacated if:

> (1)  The award was procured by corruption, fraud, or other undue means;
>
> (2)  There was:
>
>> (A)  Evident partiality by an arbitrator appointed as a neutral arbitrator;
>>
>> (B)  Corruption by an arbitrator; or
>>
>> (C)  Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3)  An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
>
> (4)  An arbitrator exceeded the arbitrator's powers;
>
> (5)  There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
>
> (6)  The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice

20

> substantially the rights of a party to the
> arbitration proceeding.

The corresponding provision of the FAA, 9 U.S.C. § 10(a), is substantively similar, particularly with regard to the provisions relevant to this case.

GNC argues the 6/17/21 Interim Order should not be confirmed because the Arbitration Panel refused to consider relevant evidence from GNC before issuing the order and because the panel exceeded its authority in issuing the 6/17/21 Interim Order as a temporary restraining order ("TRO") without prior notice to GNC.  See Haw. Rev. Stat. § 658A-23(a)(3), (4); 9 U.S.C. § 10(a)(3), (4).  GNC essentially raises a due process argument.  This district court has stated:

> The Federal Arbitration Act ("FAA") provides
> limited circumstances under which a federal court
> may vacate or modify a binding arbitration award.
> See 9 U.S.C. §§ 10-11.  This authority is
> extremely narrow and designed to preserve due
> process but not to permit unnecessary intrusion
> into private arbitration procedures.  Kyocera
> Corp. v. Prudential-Bache Trade Servs., 341 F.3d
> 987, 997 (9th Cir. 2003) (en banc).

Balberdi v. Fedex Ground Package Sys., Inc., 209 F. Supp. 3d 1160, 1163 (D. Hawai`i 2016) (quoting Kenneth H. Hughes, Inc. v. Aloha Tower Dev., Corp., 654 F. Supp. 2d 1142, 1145 (D. Hawai`i 2009)).  The Hawai`i Supreme Court has found Hughes to be persuasive in the analysis of motions brought under Haw. Rev. Stat. Chapter 658A because of the similarities between the FAA

and Chapter 658A.  See In re Hawai`i State Tchrs. Ass'n, 140
Hawai`i 381, 399, 400 P.3d 582, 600 (2017).  Thus, under both
Chapter 658A and the FAA, a violation of a party's due process
rights is a ground that warrants vacating an arbitration award.

GNC argues the Motion to Clarify sought further relief
in addition to what the Arbitration Panel had previously
granted.  However, viewing the arbitration proceeding as a
whole, the 6/17/22 Interim Order did not grant new relief, but
rather reinforced the Arbitration Panel's prior orders.  To the
extent that Plaintiffs' Motion to Clarify raised additional
arguments and evidence, the panel stated it would address those
during the August 22, 2022 proceeding.  Although the Arbitration
Panel issued the 6/17/22 Interim Order before GNC could file a
response, GNC was not denied due process because the issues
addressed in the order built upon the orders that the panel
issued regarding Plaintiffs' prior motions, and GNC had the
opportunity to be heard in connection with the prior motions.
See, e.g., Colombe Decl., Exh. B (9/10/21 Interim Order) at 1
(dkt. no. 1-3 at PageID #: 39) (noting that a hearing on the
First Emergency Motion was held on 9/3/21); Whattoff Opp. Decl.,
Exh. 7 (GNC's opp. to Plaintiff's Third Emergency Motion);
Colombe Decl., Exh. E (6/7/22 Interim Order) at 1 (dkt. no. 1-3
at PageID #: 83) (noting that the Arbitration Panel considered
the Third Emergency Motion and the opposition thereto).

22

Nor was GNC denied due process because the Arbitration Panel referred to the 6/17/22 Interim Order as a TRO.  While perhaps not the best choice of words by the panel, the inclusion of the term "temporary restraining order" did not automatically transform the character of the order.  At its essence, the 6/17/22 Interim Order reinforced the Arbitration Panel's prior orders and reiterated that the parties were to maintain the status quo until the conclusion of the arbitration.  Viewing the 6/17/22 Interim Order in the context of the arbitration proceeding as a whole, the order did not constitute a TRO.  This Court therefore rejects GNC's argument that the Arbitration Panel violated GNC's due process rights by issuing a TRO without prior notice to GNC.

GNC also argues the 6/17/21 Interim Order is inconsistent with the Arbitration Panel's prior orders, the terms of the MSA, and the Data Center's policies.  However, in arbitrations governed by Chapter 658A,

> "the scope of an arbitrator's authority is determined by the agreement of the parties," and an arbitrator is imbued with broad discretion in resolving a dispute.  Kona Village Realty, Inc. v. Sunstone Realty Partners, XIV, LCC, 123 Haw. 476, 477, 236 P.3d 456, 457 (Haw. 2016). "[P]arties who arbitrate a dispute assume all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact," thus "[w]here arbitration is made in good faith, parties are not permitted to prove that an arbitrators [sic] erred as to the law or the

23

facts of the case." <u>Tatibouet v. Ellsworth</u>, 99
Haw. 226, 233, 54 P.3d 397, 404 (Haw. 2002)
(quoting <u>Wayland Lum Constr. Inc. v. Kaneshige</u>,
90 Haw. 417, 422, 978 P.2d 855, 860 (Haw. 1999)).
Moreover, a "court's job is not to second-guess
the arbitrator's contract interpretation, but
only to ensure that he is, in fact, interpreting
the contract." <u>Ass'n of Flight Attendants, AFL-
CIO v. Aloha Airlines, Inc.,</u> 158 F. Supp. 2d
1200, 1205 (D. Haw. 2001) (citing <u>Hawaii
Teamsters and Allied Worker's Union, Local 996 v.
United Parcel Service</u>, 241 F.3d 1177 (9th Cir.
2001)).  To that end, the Supreme Court of Hawaii
has stated that "vacatur is not a proper remedy
for an arbitrators' imperfect understanding of
law." <u>Tatibouet</u>, 99 Haw. at 236, 54 P.3d at 407.

<u>YMCA</u>, 2018 WL 2708739, at *4 (brackets in <u>YMCA</u>) (footnote

omitted).  GNC has not established that the 6/17/21 Interim

Order contradicts the MSA to such an extent that the order shows

the Arbitration Panel was not in fact interpreting the MSA.

Similar principles apply under the FAA.  The United

States Supreme Court has stated:

Under the FAA, courts may vacate an
arbitrator's decision "only in very unusual
circumstances." <u>First Options of Chicago, Inc.
v. Kaplan</u>, 514 U.S. 938, 942 (1995).  That
limited judicial review, we have explained,
"maintain[s] arbitration's essential virtue of
resolving disputes straightaway." <u>Hall Street
Associates, L.L.C. v. Mattel, Inc.,</u> 552 U.S. 576,
588 (2008).  If parties could take "full-bore
legal and evidentiary appeals," arbitration would
become "merely a prelude to a more cumbersome and
time-consuming judicial review process." <u>Ibid.</u>

<u>Oxford Health Plans LLC v. Sutter</u>, 569 U.S. 564, 568-69 (2013)

(alteration in <u>Oxford Health</u>).  The Supreme Court also noted

24

that, when a party seeks to have an arbitration award vacated on

the ground that the arbitrator exceeded his powers,

> "[i]t is not enough . . . to show that the
> [arbitrator] committed an error — or even a
> serious error." Stolt-Nielsen [S.A. v.
> AnimalFeeds Int'l Corp.], 559 U.S.[ 662,] 671
> [(2010)].  Because the parties "bargained for the
> arbitrator's construction of their agreement," an
> arbitral decision "even arguably construing or
> applying the contract" must stand, regardless of
> a court's view of its (de)merits. Eastern
> Associated Coal Corp. v. Mine Workers, 531 U.S.
> 57, 62 (2000) (quoting Steelworkers v. Enterprise
> Wheel & Car Corp., 363 U.S. 593, 599 (1960);
> Paperworkers v. Misco, Inc., 484 U.S. 29, 38
> (1987); internal quotation marks omitted).  Only
> if "the arbitrator act[s] outside the scope of
> his contractually delegated authority" — issuing
> an award that "simply reflect[s] [his] own
> notions of [economic] justice" rather than
> "draw[ing] its essence from the contract" — may a
> court overturn his determination. Eastern
> Associated Coal, 531 U.S., at 62 (quoting Misco,
> 484 U.S., at 38).  So the sole question for us is
> whether the arbitrator (even arguably)
> interpreted the parties' contract, not whether he
> got its meaning right or wrong.

Id. at 569 (some alterations in Oxford Health).  GNC has not

established that the Arbitration Panel failed to interpret the

parties' contract.

GNC's arguments are ultimately mere assertions that

the Arbitration Panel made errors of law or fact in the 6/17/21

Interim Order, and, under the circumstances of this case, this

Court cannot second-guess the Arbitrator Panel's rulings, under

either Haw. Rev. Stat. Chapter 658A or the FAA.  Because there

is no ground to vacate the 6/17/22 Interim Order, and because no

party has identified any ground to modify or correct the order,
the 6/17/22 Interim Order must be confirmed, regardless of
whether Haw. Rev. Stat. Chapter 658A or the FAA applies to this
Court's consideration of the Motion to Confirm.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion for
Expedited Order to Confirm and Enforce Pre-Award Ruling and
Award of Arbitration Panel, filed June 27, 2022, is HEREBY
GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 28, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RTI CONNECTIVITYY PTE, LTD, ET AL. VS. GATEWAY NETWORK
CONNECTIONS, LLC; CV 22-00302 LEK-RT; ORDER GRANTING PLAINTIFFS'
MOTION FOR EXPEDITED ORDER TO CONFIRM AND ENFORCE PRE-AWARD
RULING AND AWARD OF ARBITRATION PANEL**